UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| T MISS TOYS & GIFTS CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> Defendants. | Case No.: 1:25-cv-08993 <br><br> **Judge Charles P. Kocoras** <br><br> **Magistrate Judge Laura K. McNally** |

### PLAINTIFF'S REPLY TO PUPTILY STORE'S RESPONSE IN OPPOSITION TO THE MOTION FOR DEFAULT JUDGMENT

Plaintiff T Miss Toys & Gifts Co., Ltd. ("Plaintiff") submits this reply to Defendant Puptily Store's Response in Opposition to the Motion for Entry of Default and Default Judgment. [42].

Defendant Puptily Store ("Defendant") was properly served on August 15, 2025, and the deadline to file a responsive pleading elapsed on September 5, 2025. [30]. Plaintiff's Motion for Entry of Default and Default Judgment was filed on September 23, 2025. [37]. One month later, Defendant filed its opposition to the motion, arguing that entry of default is premature under Article 10 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), and that good cause exists for the Court to deny default judgment.

As an initial matter, the Hague Convention does not apply in this case because Defendant's physical address is unknown. Furthermore, Defendant has established neither good cause nor a meritorious defense to preclude entry of default judgment.

### BACKGROUND

Prior to filing the Complaint, Plaintiff submitted a Digital Millennium Copyright Act ("DMCA") notice to Amazon regarding Defendant's infringing listings. In response, Amazon

1

removed Defendant's infringing listings. *See* Exhibit 2 to the Motion for Entry of Default Judgment. [38-3]. Defendant then submitted a counter notice alleging that the takedown was done in mistake and requested that the Infringing Products be reinstated. *Id.* Amazon informed Plaintiff of the counter notice and indicated that, unless a lawsuit was filed within 10 days, Defendant's infringing products would be relisted and made available for sale. *Id.* Based on the belief that Defendant was engaged in the sale of infringing products through multiple e-commerce stores operating under different seller aliases and business names, Plaintiff initiated a Schedule A action naming "Puptily Store" as the defendant, with the intention of identifying and adding additional e-commerce stores[1] operated by Defendant as discovery progressed.

On July 31, 2025, Plaintiff filed a Complaint against Defendant for infringing use of Plaintiff's federally registered copyright No. VA 2-305-257 ("T-Miss Works") in connection with offering for sale and selling infringing products. [1]. Plaintiff is the owner of T-Miss Works that protects the creative content of Plaintiff's images and illustrations. [1] at ¶ 4. Without authorization from Plaintiff, or any right under the law, Defendant has deliberately offered for sale and sold infringing products incorporating T-Miss Works through its e-commerce stores to the U.S. including Illinoi. *Id.* at ¶¶ 2, 7, 11, 22. Defendant's infringing products are virtually identical to or substantially similar to T-Miss Works and thus infringed T-Miss Works. *Id.*

As clearly demonstrated in the screenshot printouts regarding Defendant's listings of the infringing products submitted along with Plaintiff's Motion for Entry of a Temporary Restraining Order [14], Defendant's infringing products feature and incorporate T-Miss Works without authorization or license. A comparison of Defendant's infringing products and Plaintiff's copyrighted works is as follows.

---

[1] Defendant admitted that, in addition to the Amazon storefront it used to sell the infringing products, it also operates a Walmart storefront. *See* [42] at p 8.



Exhibit 1 and 2 to the Declaration of Shiting Zhang. [13, 14].

On August 6, 2025, the Court entered a Temporary Restraining Order and authorized Plaintiff to complete service of process on Defendant through email and website posting pursuant to Fed. R. Civ. P. 4(f)(3) ("TRO"). [19]. Section 7 of the TRO provided that:

> Plaintiff may provide notice of these proceedings to Defendants, including notice of the preliminary injunction hearing, service of process pursuant to Fed. R. Civ. P. 4(f)(3), and any future motions by electronically publishing a link to the Complaint, this Order and other relevant documents on a website and by sending an email to the email addresses provided for Defendants by third parties that includes a link to said website. The Clerk of the Court is directed to issue a single original summons in the name of "Dongguanshi Shipai Baojing Riyongpindian and all other Defendants identified in the Complaint" that shall apply to all Defendants. The combination of providing notice via electronic publication and email, along with any notice that Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

3

Plaintiff published the Complaint, the TRO, and other relevant court papers on a website at the link https://yklawusinternetenforcement8993.wordpress.com/ ("Service Website"). Declaration of Zoey Huang ("Huang Decl.") at ¶ 2. On August 15, 2025, Plaintiff completed service of process on Defendant through Defendant's e-mail address at bojin_store@163.com provided by Amazon. [30]; *see also* Huang Decl. at ¶ 3. As such, Defendant has had access to all the court documents since at least August 15, 2025. Plaintiff then moved for entry of a Preliminary Injunction which was granted by the Court on September 3, 2025. [35].

On September 8, 2025, Defendant reached out to Plaintiff through email requesting a settlement demand and case information. Huang Decl. at ¶ 4. Plaintiff responded with its settlement position and the screenshot printouts regarding Defendant's infringing listings. *Id.* Plaintiff also advised Defendant that any request for extension must be made in writing prior to the answer deadline. *Id.* at ¶ 6. Defendant never responded. *Id.*

On September 23, 2025, Plaintiff moved for Entry of Default and Default Judgment after the deadline for Defendant to file a responsive pleading had expired [37]. Defendant filed its opposition pursuant to Fed. R. Civ. P. 55(c) on October 5, 2024. [42].

## ARGUMENT

Defendant claims there is good cause to not enter default judgment pursuant to Fed. R. Civ. P. 55(c). *See* [42] at p 6. A party seeking to set aside the entry of an order of default must show each of the following: "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 810 (7th Cir. 2007). Whether to set aside an order of default is left to the discretion of the district court. *Id.*

### A. Defendant Has Not Established Good Cause.

A party challenging the entry of default judgment must satisfy the "good cause shown" standard in Rule 55(c). This standard requires a court to weigh (1) the willfulness of default, (2) the

4

existence of any meritorious defenses, and (3) prejudice to the non-defaulting party. *Guggenheim Cap., LLC v. Birnbaum,* 722 F.3d 444, 454–55 (2d Cir. 2013); *see also Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.,* 375 F.3d 922, 925–26 (9th Cir. 2004).

    i.    <u>Defendant' Default Was Willful.</u>

Defendant was properly served using the method of service authorized by the Court in the TRO through e-mail to bojin_store@163.com and received notice from Plaintiff regarding this case on at least two separate occasions (in addition to the notice received from Amazon related to disabling the infringing listings). Huang Decl. at ¶ 5. Copies of the Complaint, summons, and relevant court documents were posted and made available to Defendant on the Service Website. *Id.* at ¶ 2. The fact that Defendant sent an ***email in English*** to Plaintiff on September 8, 2025 requesting case information and Plaintiff's settlement position demonstrates that Defendant had read the service email, accessed the Service Website, and learned about this case.

In Plaintiff's response dated September 8, 2025, Plaintiff explicitly advised Defendant that any extension request must be made in writing and prior to the response deadline. *Id.* at ¶ 6. In addition, a prominently displayed paragraph in large font is also available on the Service Website that states "any answer or other response to the Complaint should be filed with the Clerk of the Court, United States District Court for the Northern District of Illinois, Eastern Division, Chicago, Illinois within twenty-one (21) days. If no appearance or pleading is filed, the Court may render a judgment against the defendants." *Id.* at ¶ 7. Nevertheless, Defendant never requested an extension to file an answer. *Id.* at ¶ 8. Defendant's opposition to the motion for entry of default judgment was filed on October 5, 2025 - more than ***four weeks*** after the deadline to file an answer had lapsed.

The only "good cause" asserted by Defendant is its stated intention to defend this case and the *pro se* document it filed with the court. *See* [42] at p 8. Defendant also claims it "moved mountains" to find local counsel, who in turn had to locate U.S. counsel. *Id.* However, Defendant's opposition

5

does not support any of its statements with evidence or a declaration by Defendant. Arguments in a brief, unsupported by documentary evidence, are not evidence. *Medallion Prods. v. McAlister*, No. 06 C 2597, 2008 U.S. Dist. LEXIS 80550, at *8 (N.D. Ill. Oct. 9, 2008) ("As it must, the court has disregarded any unsupported factual statements") (citing *United States v. Stevens*, 500 F.3d 625, 628-29 (7th Cir. 2007) ("[I]t is universally known that statements of attorneys are not evidence.")). Moreover, lack of communication between attorney and client was not a basis for showing good cause. *Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994); *see also Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994) (neither simple incarceration nor lack of legal counsel on the particular matter at issue, by themselves, provide the requisite good cause for defaulting).

    ii.    <u>Defendant Did Not Act Quickly and Plaintiff Would Be Prejudiced If the Default Judgment Is Denied.</u>

Defendant has failed to demonstrate quick action, as it waited more than four weeks after the answer deadline had expired and over seven weeks after becoming aware of the case. *See Sullivan v. Gen. Plumbing, Inc.,* No. 06-cv-02464, 2007 WL 1030236, at *4 (N.D. Ill. Mar. 31, 2007) (three weeks does not constitute quick action); *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994) (five weeks not quick action).

Additionally, denying entry of default judgment would unfairly prejudice Plaintiff, the party without fault, by requiring it to incur further time and money litigating a matter that Defendant has failed to timely address.

**B. Defendant Has Failed to Establish a Meritorious Defense.**

Defendant raises several defenses, including lack of service, lack of minimum contact with Illinois, the absence of any claim alleged against it, and a denial of infringement. However, none of these defenses has merit.

    i.    <u>The Court Properly Ordered Service Under Fed. R. Civ. P. 4(F)(3).</u>

Federal Rule of Civil Procedure 4(f) governs serving individuals in a foreign country. Fed. R. Civ. P 4(f)(3) provides that service may be effectuated "by other means not prohibited by international agreement as may be directed by the court." "[T]he task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)" is committed "to the sound discretion of the district court." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002); *In re OnePlus Tech. (Shenzhen) Co., Ltd.*, No. 2021-165, 2021 WL 4130643, at *3 (Fed. Cir. Sept. 10, 2021) ("[C]ourts have recognized that delay and expense are factors that legitimately bear on whether to issue an order for alternative service.").

In this case, the Court properly asserted its wide discretion under Fed. R. Civ. P. 4(f)(3) to find that electronic service was justified and constituted "notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections." [19] at ¶ 7. Fed. R. Civ. P. 4(f) does not require a plaintiff to attempt service by other means before seeking authorization to use an alternate means of service under Rule 4(f)(3). *See CFTC v. Caniff*, No. 19-cv-2935, 2020 U.S. Dist. LEXIS 33416, at *14 (N.D. Ill. Feb. 27, 2020) (explaining that a plaintiff "is not required to first attempt service through the Hague Convention under Rule 4(f)(1) before asking this Court to allow alternate means"). Courts in this District have repeatedly upheld electronic service in similar cases. *See, e.g., NBA Props. v. The P'ships, et al.*, 549 F. Supp. 3d 790, 795 (N.D. Ill. July 15, 2021), *aff'd NBA Props. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022) (upholding e-mail service on China- based Internet store operator); *Kate Louise Powell v. The Partnerships and Unincorporated Associations Identified on Schedule A*, No. 25-cv-01307 (N.D. Ill. Feb. 20, 2025) (Dkt. No. 30) (Kocoras, C); *Laura Graves v. The Partnerships and Unincorporated Associations Identified on Schedule A*, No. 25-cv-01628 (N.D. Ill. Mar. 03, 2025) (Dkt. No. 28) (Kocoras, C); *Adam Arthouros Martinakis v. The Partnerships and Unincorporated Associations Identified on Schedule A*, No. 25-cv-03464 (N.D. Ill. Apr. 11, 2025) (Dkt. No. 28) (Kocoras, C); *Vincent Hie v. The Partnerships and Unincorporated*

*Associations Identified on Schedule A*, No. 25-cv-03722 (N.D. Ill. Apr. 28, 2025) (Dkt. No. 32) (Kocoras, C); *Endryko Karmadi v. The Partnerships and Unincorporated Associations Identified on Schedule A*, No. 25-cv-07436 (N.D. Ill. Jul. 21, 2025) (Dkt. No. 31) (Kocoras, C).

Defendant argues that where the pleadings show that its addresses were available, Plaintiff is required to comply with the Hague Convention. [42] at p 9. Defendant also argues that Plaintiff must obtain a "certificate of any kind" from the competent authorities in China. *Id.* at p 6. However, the plain language of Fed. R. Civ. P. 4(f) does not mention or suggest any of the requirements that Defendant is seeking to impose. *See Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 1492, 1495 (2020) ("Nor does this Court usually read into statutes words that aren't there."). "Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means." *Rio Props.*, 284 F.3d at 1015; *Viahart, L.L.C. v. He GangPeng*, No. 21-40166, 2022 U.S. App. LEXIS 3974 (5th Cir. Feb. 14, 2022) (upholding e- mail service on China based defendant and finding that "we need not address that argument because service was made pursuant to subsection (f)(3), not subsection (f)(1) or the Hague Convention."); *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018); *see also Oakley Inc. v. Yantai Lanlei Network Tech. Co.*, No. 20-cv-00396 (N.D. Ill. May 12, 2021) (Dkt. No. 54) ("… the Federal Rules do not require plaintiffs to attempt service under Rule 4(f)(1) before moving on to Rule 4(f)(3)."). "Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing." *In re OnePlus Tech. (Shenzhen) Co.*, 2021 WL 4130643, at *3. In other words, alternate service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Rio Props., Inc.*, 284 F.3d at 1015. Service need not have been attempted under the Hague Convention before alternative service methods can be employed. *Nuance Comm'ns. v. v. Abbyy Software House*, 626 F.3d 1222, 1238 (Fed. Cir. 2010).

The Hague Convention does not prohibit electronic service, and China has not objected to service of process by e-mail. The Convention neither authorizes nor prohibits service by e-mail— it is entirely silent on the issue. *See Maclean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 08 CV 2593, 2008 U.S. Dist. LEXIS 97241, at *2 (N.D. Ill. Dec. 1, 2008). While China has objected to service by postal channels under Article 10 of the Hague Convention, courts have routinely recognized that such objections do not extend to service by e-mail. *See, e.g., Oakley Inc.*, No. 20- cv-00396 (Dkt. No. 54) at p. 2 ("[M]any courts have rejected the analogy of postal service to email service, recognizing that 'the instantaneous and traceable nature of email cures the concerns with postal service[,'] . . . Furthermore, unlike postal service, email does not require physical intrusion on Chinese territory, which is China's express objection to the availability of postal service under the Hague Convention."); *see also Victaulic Co. v. Allied Rubber & Gasket Co.,* No. 3:17-cv- 01006-BEN-JLB, 2020 U.S. Dist. LEXIS 82150, at *7 (S.D. Cal. May 8, 2020) ("Although Article 10(a) references 'postal channels,' it does not mention service by email, online messaging system, or other electronic means. Thus, China's objection to service by 'postal channels' does not prohibit service by 'electronic means.'"). Finally, China's internal procedures for effectuating service are irrelevant to the question of whether alternate service under Rule 4(f)(3) was proper in a lawsuit pending in the United States. *Nanya Tech. Corp. v. Fujitsu, Ltd.*, No. 06-00025, 2007 U.S. Dist. LEXIS 5754, at *14 (D. Guam Jan. 25, 2007). The amici curiae brief provided by Defendant carries no binding authority in this District.

Court-directed electronic service pursuant to Rule 4(f)(3) is particularly appropriate in this case where "there is a need for speed that cannot be met by following the Hague Convention methods…." *See Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016). Even if Defendant's purported address is real and Defendant is available for service at that address, it is nearly certain that the Chinese Central Authority will exceed six months in its attempt to effectuate service. *See Victaulic Co.*, 2020 U.S. Dist. LEXIS 82150, at *3 ("… the Ministry of Justice in China noted that service is 'time-consuming and

9

not efficient' and confirmed that it often takes more than two years to complete."). As such, it would have been impossible to effectuate service on Defendant prior to expiration of the TRO.

Service via e-mail and electronic publication comports with constitutional notions of due process, because it was reasonably calculated, under all the circumstances, to apprise Defendant of the pendency of this action and afford Defendant an opportunity to present objections. *See Maclean-Fogg Co.*, 2008 U.S. Dist. LEXIS 97241, at *5; *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. Nov. 27, 2015) ("…the Court finds that in this case, service to the email address listed on defendant's website is 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'").

  ii. <u>The Hague Convention Does Not Apply.</u>

Article 1 of the Hague Convention provides that the "convention shall not apply where the address of the person to be served with the document is not known." In the current case, defendant's physical address cannot be verified, thus, the Hague Convention does not apply to this action. Nor is Plaintiff required to wait six months after effectuating service before seeking default judgment under Article 15 of the Hague Convention. Defendant's Amazon store listing page shows its address as "Shipaizhen Shipai Puxinsanlu No.134 Room 111, Dongguanshi, Guangdong Province 523000 CN" and business name as "dongguanshi shipai baojing riyongpindian". Huang Decl. at 9-10. A search of the listed address and business name on Google Maps and Baidu Maps (a search engine widely used in China) did not yield any identifiable location associated with Defendant. *Id.* The search results only turned general reference to "Shipai, Dongguan" and "Dongguan." *Id.* As such, Defendant's address is ambiguous and does not appear to correspond to an identifiable or verifiable business location. *Id.*

Here, the Court properly exercised its authority in granting electronic service under Rule 4(f)(3). Plaintiff served Defendant via e-mail and electronic publication pursuant to the Court's authorization. The Hague Convention was not mandatory, does not undermine the Court's authority

under Rule 4(f)(3), does not prohibit electronic service, and does not apply here. As such, Defendant was properly served.

### iii. Defendant Has Sold Infringing Products to Consumers in This Judicial District.

Defendant has not established a meritorious defense. A meritorious defense must at least raise a serious question regarding the propriety of a default judgment and be supported by a developed legal and factual basis. *Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012). General denials of the complaint's allegations, without factual support, are insufficient to state a meritorious defense. *Id.* at 891. A meritorious defense requires more than a "general denial" and "bare legal conclusions." *Id.* (quoting *Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42, 46 (7th Cir. 1994)). *See also Stephenson v. El-Batrawi*, 524 F.3d 907, 914 (8th Cir. 2012) ("simple assertions unsupported by specific facts or evidence" is not a meritorious defense).

Defendant's sole argument in support of its noninfringement defense is that the Complaint itself is simply untrue and that no infringement occurred. [42] at p 13. This is a bare legal conclusion, with nothing resembling the legal and factual support necessary to mount a meritorious defense. *See Wehr*, 688 F.3d at 890.

Defendant asserts that it had no minimum contact with Illinois, that Plaintiff did not allege sales of infringing products in Illinois, and that the Court lacks personal jurisdiction over the China-based Defendant. [42] at p 11. However, Defendant has willfully and conveniently ignored the specific allegations set forth in the Complaint, the motion for entry of TRO, the motion for entry of default judgment, and the accompanying declarations and evidence.

Defendant's argument that Plaintiff failed to state a claim also fails. "Under the federal rules' notice pleading standard, a complaint must contain only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 555 (7th Cir. 2012); *see also*, Fed. R. Civ. P. 8(a)(2). For a claim to be plausible, the plaintiff must put forth

11

enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross*, 578 F.3d 574, 581(7th Cir. 2009).

Plaintiff's Complaint alleged that it is the owner of T-Miss Works that protects the creative content of Plaintiff's images and illustrations. [1] at ¶ 4. Without authorization from Plaintiff, or any right under the law, Defendant has deliberately offered for sale and sold infringing products incorporating T-Miss Works through its e-commerce stores to the U.S. including Illinoi. *Id.* at ¶¶ 2, 7, 11, 22. Defendant's infringing products are virtually identical to or substantially similar to T-Miss Works and thus infringed T-Miss Works. *Id.* Schedule A attached to the Complaint lists Defendant's Amazon store name, business name, email address, and URL. [5, 38-1]. Moreover, in its motion for entry of default judgment, Plaintiff submitted a copy of the DMCA notice and Defendant's response as evidence of willful copyright infringement. [38-3]. As such, Defendant has "fair notice" of Plaintiff's copyright infringement claims. *See Twombly*, 550 U.S. at 555; *see also, Simpson v. Nickel*, 450 F.3d 303, 306 (7th Cir. 2006); *see also, Interfocus Inc. v. The Defendants Identified in Schedule A, et al*, N.D. Ill. 22-cv-2256 (Nov. 7, 2022) (denying motion to dismiss based on Fed. R. Civ. P 12(b)(6)). Data provided by Amazon regarding Defendant's business operation indicates that Defendant has sold at least 39,940 infringing products and generated revenue totaling $405,387. Huang Decl. at ¶ 11. Dozens of the infringing products were sold to consumers in Illinoi. Defendant 's conduct went beyond merely maintaining an interactive website. Therefore, Defendant does not have a meritorious defense based on a failure to state a claim.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Opposition and grant Plaintiff's Motion for Entry of Default Judgment.

| | |
|---|---|
| Date: October 20, 2025 | Respectfully submitted,<br><br>*/s/ Faye Yifei Deng*<br>Faye Yifei Deng<br>YK Law LLP<br>445 S Figueroa Street, Suite 2280<br>Los Angeles, California 90071<br>Telephone: (213) 401-0970<br>Email: fdeng@yklaw.us<br><br>*Attorney for Plaintiff T Miss Toys & Gifts Co., Ltd* |

13